## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTONIO J. BARBOSA and <br> JOAN F. BARBOSA, <br><br>     Petitioners <br><br>     v. <br><br> WELLS FARGO BANK, N.A., <br> AS TRUSTEE FOR SOUNDVIEW HOME <br> LOAN TRUST SERIES 2007-OPT1, <br><br>     Respondent. | Civil Action No. 12-12236-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                               **August 13, 2013**

### I.      Introduction

Antonio and Joan Barbosa (the "Barbosas") have brought a try title action against Wells Fargo Bank, N.A., as trustee for Soundview Home Loan Trust Series 2007-OPT1 ("Wells Fargo"), under Mass. Gen. L. c. 240, § 1.  Wells Fargo removed the action to this Court and the Barbosas have moved to remand the case to the Massachusetts Land Court.  Wells Fargo has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The Court DENIES the Barbosas' motion to remand and GRANTS Wells Fargo's motion to dismiss without prejudice.  The Court DENIES Wells Fargo's request for costs.

### II.     Factual Allegations

Unless otherwise noted, the following facts are as alleged in the petition.

The Barbosas acquired record title to the premises at 19 Round Farm Road, Rehoboth, Massachusetts, 02769 (the "premises") pursuant to a quitclaim deed executed on July 18, 2006 and recorded with the Bristol County Registry of Deeds.  Pet. ¶¶ 2, 4.  On July 26, 2006, the Barbosas executed a mortgage note (the "Note") made payable to Option One Mortgage Corporation ("Option One") as the Lender and Payee in the original principal amount of $531,000 and simultaneously granted a mortgage (the "Mortgage," together with the Note, the "Barbosa Mortgage Loan") to Option One.  Id. ¶¶ 6–7.[1]  The Barbosas retain a statutory right of redemption.  Id. ¶ 7.  On June 10, 2010, "Sand Canyon Corporation f/k/a Option One Mortgage Corporation" assigned the Mortgage to Wells Fargo (the "Assignment").  Id. ¶ 18; Ex. E, Pet., D. 1-4 at 38.

On April 1, 2007, Financial Asset Securities Corp. ("FASC") as Depositor, Option One as Servicer, and Wells Fargo as Trustee entered into a Pooling Servicing Agreement ("PSA"), which created the Soundview Home Loan Trust 2007-OPT1 (the "Trust").  Id. ¶ 23; Ex. A, Pet., D. 1-3 at 12 ¶ 7.  Pursuant to the terms of the Trust's governing documents, three sales or transfers of the Barbosa Mortgage Loan were required to be made by May 15, 2007 (the "Closing Date"):  (1) first, Option One must have sold the Barbosa Mortgage Loan to Greenwich Capital Financial Products ("Greenwich") pursuant to a Master Mortgage Loan Purchase and Interim Servicing Agreement; (2) second, Greenwich must have sold the Barbosa Mortgage Loan to FASC pursuant to an Assignment and Recognition Agreement dated the Closing Date;

---

[1] "Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)."  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (quoting Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 195 n.1 (1st Cir. 2001)).  Thus, the Court notes that the Mortgage, which the Barbosas attached as Exhibit A to their petition, indicates that the Mortgage and Note were executed on March 22, 2007.  Ex. A, Pet., D. 1-4 at 2.

and (3) third, FASC must have assigned the Barbosa Mortgage Loan to Wells Fargo "for the benefit of the Certificateholders" pursuant to the PSA dated the Closing Date.  Pet. ¶¶ 24–30. The PSA dictates that the Trust must have been formed by May 15, 2007, meaning all of the Trust's assets must have been in the Trust's name by that date.  Id. ¶ 37.  Accordingly, the Trust pool is a finite set of assets that cannot be supplemented after the Closing Date.  Id.

On October 4, 2012, Wells Fargo delivered a letter to the Barbosas notifying them of its intention to sell the premises at a foreclosure auction on November 1, 2012.  Id. ¶ 16.  The letter also attached the notice of the sale, which was published in the Taunton Gazette and states the following:

> By virtue of and in execution of the Power of Sale contained in a certain mortgage given by Antonio J. Barbosa and Joan F. Barbosa to Option One Mortgage Corporation, dated March 22, 2007 and recorded at Bristol County (Northern District) Registry of Deeds in Book 16669, Page 301 of which mortgage Wells Fargo Bank, N.A., as Trustee for Soundview Home Loan Trust 2007-OPT1, Asset-Backed Certificates, Series 2007-OPT1 is the present holder by assignment recorded at Bristol County (Northern District) Registry of Deeds in Book 1893, Page 260, for breach of conditions of said mortgage and for the purpose of foreclosing the same, the mortgaged premises located at 19 Round Farm Road, Rehoboth, MA 02769 will be sold at a Public Auction at 12:00 P.M. on November 1, 2012, at the mortgaged premises . . . .

Id. ¶ 17; Ex. D, Pet., D. 1-4 at 36.  Thus, according to the Barbosas, Wells Fargo "seeks to assert dominion and control over the ownership of a fee to the Barbosas' premises based solely upon its claim to the title from a purported 'assignment' of mortgage directly from Sand Canyon f/k/a Option One Mortgage Corporation to [Wells Fargo]."  Pet. ¶ 19.  The Barbosas allege that the Assignment is "legally impossible" because Wells Fargo has not accounted for all of the preceding transfers of title to the premises, which were required to be made by the Trust's governing documents, and the Assignment occurred after the Closing Date.  Id. ¶¶ 34, 37, 39–41. Therefore, the Mortgage was never legally conveyed to Wells Fargo and thus Wells Fargo

"currently has non-existent rights to any claims of title to the Barbosas' premises."  <u>Id.</u> ¶¶ 43, 46, 48.

Finally, the Barbosas allege that because Wells Fargo relies upon the Assignment to foreclose upon the premises, there "exists the possibility of an adverse claim" against the Barbosas' title to the premises.  <u>Id.</u> ¶ 50.  The Barbosas request that (1) Wells Fargo and others be summoned to show cause why they should not be required to bring an action to try title and (2) if they fail to do so, the Court order that Wells Fargo and others, "seeking to claim an interest in the premises, be forever barred from having or enforcing any claim to title in [the premises]." <u>Id.</u> at 7–8.

## III.    Procedural History

On October 22, 2012, the Barbosas filed the instant petition in Massachusetts Land Court to compel Wells Fargo to try title pursuant to Mass. Gen. L. c. 240, § 1.  D. 1-3, D. 1-5 at 2.  On December 3, 2012, Wells Fargo removed the case to this Court based on diversity jurisdiction. D. 1.  On December 10, 2012, Wells Fargo moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and requested costs pursuant to Mass. Gen. L. c. 240, § 3.  D. 4.  On December 29, 2012, the Barbosas filed a motion to remand the case to the Land Court.  D. 12.  After a hearing on the motions, the Court took the matters under advisement.  D. 26.

## IV.    Motion to Remand

The Barbosas have filed a motion to remand the try title action to Land Court on the basis that:  (1) this Court lacks subject matter jurisdiction because Wells Fargo has not established that the amount in controversy is in excess of $75,000, (2) the Massachusetts Land Court has exclusive jurisdiction, and (3) even if this Court has subject matter jurisdiction, it should remand

under the doctrine of abstention.  D. 13.  The Barbosas also seek recovery of their costs and expenses expended in pursuing a remand order.  Id. at 17–18; see Martin v. Franklin Capital Corp., 546 U.S. 132, 134 (2005) (noting that "[a]n order remanding a removed case to state court 'may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal'" (quoting 28 U.S.C. § 1447)).

## A.  Legal Standards

The Court has jurisdiction of all civil actions between citizens of different states where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).  Pursuant to 28 U.S.C. § 1446(b), a defendant may remove a case to federal court within thirty days after the receipt of the initial pleading or service of summons.  If at any time before final judgment it appears that the Court lacks subject matter jurisdiction, the case must be remanded to the state court.  Id. § 1447(c).  "For the purpose of establishing diversity jurisdiction, the amount in controversy is determined by looking to the circumstances at the time the complaint is filed."  Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995).

When a plaintiff files an action in state court and the defendant responds by invoking federal jurisdiction through removal, the defendant has the burden of establishing that removal to the district court is proper.  Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). Therefore, Wells Fargo has the burden of showing that the amount in controversy meets the jurisdictional threshold.  Arrigo v. Scholarship Storage, Inc., No. 10-11650-MLW, 2011 WL 3584715, at *2 (D. Mass. Aug. 10, 2011).  "The First Circuit has not yet articulated the defendant's burden of proving the amount in controversy" where, as here, "the plaintiff has not

claimed a specific amount of damages in the pleadings." Toro v. CSX Intermodal Terminals, Inc., No. 12-40115-TSH, 2013 WL 593947, at *3 (D. Mass. Feb. 14, 2013) (quoting Arrigo, 2011 WL 3584715, at *3) (internal quotation marks omitted); see D. 1-3. However, courts in this district have applied the "reasonable probability" standard, which in this context is equated to the "preponderance of the evidence" standard. See Toro, 2013 WL 593947, at *3 (applying the "reasonable probability" standard and noting that "[t]he prevailing view in this District appears to be that First Circuit decisions in related areas of law suggest that 'reasonable probability' is the appropriate standard"); Arrigo, 2011 WL 3584715, at *4 (applying the "preponderance of the evidence" standard and noting that it is equated with the "reasonable probability" standard); see also Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 50 (1st Cir. 2009) (considering the standard for establishing the jurisdictional minimum under the Class Action Fairness Act of 2005 and finding no error in the district court's discussion of the removing party's burden in terms of preponderance of the evidence because although "the removing defendant's burden is better framed in terms of a 'reasonable probability,'" the "reasonable probability standard is . . . for all practical purposes identical to the preponderance standard adopted by several circuits"). Since the jurisdictional amount is not facially apparent from the petition, the Court must "look to the notice of removal and any other materials submitted by [Wells Fargo]" to determine if Wells Fargo has satisfied its burden. Reynolds v. World Courier Ground, Inc., 272 F.R.D. 284, 286 (D. Mass. 2011) (quoting Evans v. Yum Brands, Inc., 326 F. Supp. 2d 214, 220 (D.N.H. 2004)) (internal quotation mark omitted).

B.     <u>Analysis</u>

The Barbosas argue that their petition is not seeking "damages" sufficient to provide an amount in controversy in excess of $75,000, "only that there exists the possibility of a specific adverse claimant (Respondent) to their title to their real property."   D. 13 at 11.   However, "[c]ourts have repeatedly held that the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover but by the judgment's pecuniary consequences to those involved in the litigation."   <u>Richard C. Young & Co., Ltd. v. Leventhal</u>, 389 F.3d 1, 3 (1st Cir. 2004); <u>see also</u> 14AA Charles Alan Wright <u>et al.</u>, Federal Practice & Procedure § 3702.5 (4th ed. 2011) (explaining that "[i]t is well-settled . . . that the amount in controversy for jurisdiction purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit").   Here, the purpose of the Barbosas' try title action is to protect their title to the premises against possible adverse claims of title.   <u>See</u> <u>Bevilacqua v. Rodriguez</u>, 460 Mass. 762, 769 (2011) (explaining that "the try title statute was enacted so that property owners might remain in possession while requiring that adverse claims be either asserted or disavowed rather than lingering indefinitely"); <u>Horton v. Liberty Mut. Ins. Co.</u>, 367 U.S. 348, 352–53 (1961) (noting that the "determination of the value of the matter in controversy for purposes of federal jurisdiction is a federal question to be decided under federal standards, although the federal courts must . . . look to state law to determine the nature and extent of the right to be enforced in a diversity case").   The Barbosas allege that Wells Fargo "currently seeks to assert dominion and control over the ownership of a fee to the Barbosas' premises based solely upon its claim to the title from a purported 'assignment' of mortgage from Sand Canyon f/k/a Option One Mortgage

7

Corporation to [Wells Fargo]" and filed a notice announcing a foreclosure sale.  Pet. ¶¶ 17, 19. As part of its request for relief, the Barbosas seek an order that either compels Wells Fargo to bring an action to try its title or forever bars it from enforcing any claim to title to the premises. See id. at 7–8.  Thus, reference to the value of the premises is an appropriate means of obtaining the amount in controversy.  See Groves v. Rogers, 547 F.2d 898, 900 (5th Cir. 1977) (noting that "[i]f suit had been brought to try title . . . the value of the property in question would as a matter of law be included in determining the amount in controversy under 28 U.S.C. s 1332"); King v. HSBC Bank USA, N.A., No. SA-12-CV-592-XR, 2012 WL 3204190, at *2 (W.D. Tex. Aug. 3, 2012) (denying a motion to remand "noting that the measure of the amount in controversy in this case, which asserts a claim for trespass to try title and injunctive relief preventing foreclosure, is the value of the property").

Wells Fargo has satisfied its burden of showing that the amount in controversy exceeds $75,000.  First, the fact that the original amount of the March 2007 mortgage on the premises was $531,000, Ex. 1, Notice of Removal, D. 1-4 at 2, suffices to show by a reasonable probability that the value of the Barbosas' property exceeded $75,000 at the time this action was removed.  Cf. McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 213 (1st Cir. 2012) (noting that "Wells Fargo deemed the property to be adequate security for a $430,000 loan as of November 2006, making it highly likely that on removal, the property was worth at least $75,000"); Bedard v. Mortg. Elec. Registration Sys., Inc., No. 11-CV-117-JL, 2011 WL 1792738, at *2 (D.N.H. May 11, 2011) (holding that "[t]he fact that the original amount of the mortgage loan, made in July 2006, was $100,000, suffices to show by a preponderance of the evidence that the fair market value of [the plaintiff's] property exceeded $75,000 at the time this

action was removed, even if the intervening decline in the real estate market is taken into account").   Second, a March 2012 appraisal valued the premises between $425,000 and $450,000.  Ex. 5, Def.'s Opp. to Mot. to Remand, D. 14-5.

The Barbosas also argue that removal to federal court is inappropriate because try title actions are within the exclusive jurisdiction of the Massachusetts Land Court.  D. 13 at 6. Pursuant to Mass. Gen. L. c. 185, § 1(d), the "land court . . . shall have exclusive original jurisdiction of . . . [p]etitions to require actions to try title to real estate, under sections one to five, inclusive, of chapter two hundred and forty."   However, this statutorily-created original jurisdiction over try title actions in the Massachusetts Land Court does not divest the federal court of jurisdiction.  See Marshall v. Marshall, 547 U.S. 293, 314 (2006) (explaining that "[j]urisdiction is determined 'by the law of the court's creation and cannot be defeated by the extraterritorial operation of a [state] statute . . . , even though it created the right of action'" (second alteration and omission in original) (quoting Tenn. Coal, Iron & R. Co. v. George, 233 U.S. 354, 360 (1914))); D.C. ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co., 797 F.2d 1041, 1045 (D.C. Cir. 1986) (stating that "[w]hether the state law that provides for the requisite state court jurisdiction is couched in permissive or mandatory terms has never been thought to affect the federal courts' jurisdiction.  Indeed, to allow such linguistic variation in state laws to have any effect would grant the states power to determine the federal courts' docket"); Landworks Creations, LLC v. U.S. Fid. & Guar. Co., No. 05-40072-FDS, 2005 WL 3728719, at *3 (D. Mass. Nov. 15, 2005) (stating that "a grant of exclusive jurisdiction by a state legislature cannot divest this Court of subject matter jurisdiction.  Put simply, a state legislature cannot define the scope of federal jurisdiction").   Accordingly, having already determined that the

jurisdictional requirements of 28 U.S.C. § 1332 have been met, the Court may exercise jurisdiction over the Barbosas' action.

Finally, the Barbosas argue that the Court should abstain from exercising jurisdiction pursuant to the doctrines identified in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), Younger v. Harris, 401 U.S. 37 (1971), and Burford v. Sun Oil Co., 319 U.S. 315 (1943). D. 13 at 12–17. "Abstention from the exercise of federal jurisdiction is the exception, not the rule" and is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976) (quoting Allegheny Cnty. v. Frank Mashuda Co., 360 U.S. 185, 188 (1959)).

Pursuant to Pullman, abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." Allegheny Cnty., 360 U.S. at 189; see also Casiano-Montañez v. State Ins. Fund Corp., 707 F.3d 124, 128 (1st Cir. 2013). However, there are no federal constitutional questions raised in this case and thus Pullman abstention is inapplicable.

Abstention is appropriate under Younger "when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Mass. Delivery Ass'n v. Coakley, 671 F.3d 33, 40 (1st Cir. 2012) (quoting Rossi v. Gemma, 489 F.3d 26, 34–35 (1st Cir. 2007)) (internal quotation marks omitted). However, the Barbosas have neither asserted a "federal constitutional challenge," nor identified an ongoing state proceeding with which the relief requested in this matter would

interfere.  In their discussion of <u>Younger</u> abstention, the Barbosas also argue that the factors listed in <u>Currie v. Group Insurance Commission</u>, 290 F.3d 1, 10 (1st Cir. 2002), support abstention in this case.  D. 13 at 15–16.  However, that case is inapplicable here because it involved a determination of whether pendency of parallel state litigation warrants a stay of the federal litigation.  <u>Currie</u>, 290 F.3d at 9–10.  Accordingly, <u>Younger</u> abstention is inapplicable.

Finally, abstention is appropriate under <u>Burford</u> "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" and "[i]t is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." <u>Colorado River</u>, 424 U.S. at 814.  However, the balance of the federal interest in maintaining jurisdiction over a dispute against the state's interests in maintaining uniformity in the treatment of a local problem and the public policy implications of difficult questions of state law "only rarely favors abstention." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 728 (1996).

In <u>Burford</u>, the Supreme Court ruled that abstention was proper where an oil company sought review of the reasonableness under Texas state law of the Texas Railroad Commission's order granting a permit to drill oil wells on a small plot of land in the East Texas oil field. <u>Burford</u>, 319 U.S. at 316–17.  The order under consideration was part of a complex general regulatory system devised for the conservation of oil and gas in Texas that involved many state actors including certain Texas courts.  <u>Id.</u> at 318–20.  The Court ultimately determined that abstention was appropriate because although the "reasonableness of the permit in that case was not of transcendent importance, . . . review of reasonableness by the federal courts in that and

future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields." Colorado River, 424 U.S. at 815.

The Supreme Court in Colorado River considered whether abstention pursuant to Burford and its progeny was appropriate in an action brought by the United States, on its own behalf and on behalf of certain Indian tribes, seeking a declaration of its rights to waters in certain rivers and tributaries in Colorado under state and federal law. Id. at 805. Despite the Court's recognition that probably "no problem of the Southwest section of the Nation is more critical than that of the scarcity of water," id. at 804, that Colorado had specifically established an elaborate regulatory scheme for allocation of water and adjudication of claims to water within the state, id., that the United States itself had utilized this scheme in the past, id. at 806, and that "the federal claims that are involved in the case go to the establishment of water rights which may conflict with similar rights based on state law," id. at 815–16, the Court held that the state law at issue "appear[ed] to be settled," and state policy interests were not sufficiently implicated to justify abstention. Id.

In arguing that Burford abstention applies, the Barbosas state that the "subject matter of this lawsuit involves an esoteric area of very old Massachusetts state law" and assert the conclusion, without further explanation, that their petition "raise[s] significant public policy concerns of extreme public interest[] relative to title to real property under the peculiar requirements of Massachusetts state law." D. 13 at 12–13. However, the Supreme Judicial Court ("SJC") in Bevilacqua, the Land Court in Abate v. Freemont Investment & Loan, No. 12 MISC 464855 (RBF), 2012 WL 6115613 (Mass. Land Ct. Dec. 10, 2012), and the First Circuit in

<u>Lemelson v. U.S. Bank Nat. Ass'n</u>, No. 12-2275, 2013 WL 3287080, at *3-4 (1st Cir. July 1, 2013) recently explained the history, intent and mechanics of the try title statute in the context of resolving a motion to dismiss with similar facts.  Furthermore, this is a case involving title to premises allegedly owned by two private individuals and the Barbosas have failed to identify any transcendent and substantial public policy issue, nor is the Court able to perceive any such considerations that exceed or even equal the seemingly substantial ones considered, but deemed insufficient for abstention purposes, in <u>Colorado River</u>.  Accordingly, the Court declines to abstain pursuant to <u>Burford</u>.

For the foregoing reasons, the Court DENIES the Barbosas' motion to remand and request for costs and expenses.

## V.      Motion to Dismiss

### A.      <u>Standard of Review</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  The Court "must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom."  <u>Ruiz v. Bally Total Fitness Holding Corp.</u>, 496 F.3d 1, 5 (1st Cir. 2007).  Dismissal for failure to state a claim is appropriate if the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  <u>Centro Medico del Turabo, Inc. v. Feliciano de Melecio</u>, 406 F.3d 1, 6 (1st Cir. 2005) (quoting <u>Berner v. Delahanty</u>, 129 F.3d 20, 25 (1st Cir. 1997)) (internal quotation marks omitted).

13

**B.**     **There is No Adverse Claim**

The Barbosas seek an order that either compels Wells Fargo to bring an action to try its title or forever bars it from enforcing its adverse claims to the property.  Pet. at 7–8.  The try title statute provides that a petition to try title may be brought only "[i]f the record title of land is clouded by an adverse claim, or by the possibility thereof."  Mass. Gen. L. c. 240, § 1.  The statute was enacted to allow property owners to remain in possession of their land "while requiring that adverse claims be either asserted or disavowed rather than lingering indefinitely." Bevilacqua, 460 Mass. at 769.  The Barbosas must allege an adverse claim to withstand Wells Fargo's motion to dismiss.  See Lemelson, 2013 WL 3287080, at *4.  The Barbosas allege that "[t]here exists the possibility of an adverse claim" because Wells Fargo relies "upon the invalid 2010 recorded assignment to assert non-existent dominion and control over the Barbosas' title." Pet. ¶ 50.   Whether the Barbosas have sufficiently alleged an adverse claim is properly challenged by a motion to dismiss for failure to state a claim.  See Lemelson, 2013 WL 3287080, at *4; Abate, 2012 WL 6115613, at *4.

The basis for the Barbosas' allegation that there is a "possibility of an adverse claim" is Wells Fargo's reliance on the Assignment to claim legal title to the premises.  Pet. ¶¶ 44, 50. The Barbosas assert that the Assignment is "legally impossible," "fatally defective" and "void" because it was not done in compliance with the "mandatory controlling terms" of the Trust's governing documents.  Id. ¶¶ 39–40, 43; D. 11 at 17–18.  Massachusetts is a "title theory state" and "a mortgage is a transfer of legal title in a property to secure a debt."  U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 649 (2011).  A "mortgage splits the title in two parts":  the mortgagee possesses legal title and the mortgagor retains either equitable title (if there has been no default)

14

or an equity of redemption (if default has occurred).  <u>Bevilacqua</u>, 460 Mass. at 774, 776 (quoting

<u>Maglione v. BancBoston Mortg. Corp.</u>, 29 Mass. App. Ct. 88, 90 (1990)) (internal quotation

marks omitted).  Wells Fargo, as a purported assignee of the Mortgage, is also the purported

mortgagee and possesses legal title, and the Barbosas, as mortgagors, possess an equity of

redemption.  <u>Id.</u> at 776.  Thus, the parties' claims to title are complementary, not adverse.  <u>Id.</u> at

775 (noting that a mortgagor and mortgagee simultaneously possess "two separate but

complementary claims to the property that do not survive the mortgage"); <u>see also</u> <u>Abate</u>, 2012

WL 6115613, at *4 (noting that "[a] mortgage estate and the underlying equitable estate, in the

form of the equity of redemption, 'are <u>prima facie</u> consistent with each other'" (quoting <u>Dewey</u>

<u>v. Bulkley</u>, 67 Mass. 416, 417 (1854))).  The Barbosas cannot commence a try title action against

an entity asserting ownership of only legal title to the Property because "[u]ncertainty as to who

holds a valid mortgage does not provide the requisite adversity to cloud a mortgagor's claim of

equitable title."  <u>Lemelson</u>, 2013 WL 3287080, at *5 & n.7; <u>see also</u> <u>Abate</u>, 2012 WL 6115613,

at *4 (stating that if "all that [the petitioner] was alleging in the complaint was that there is

uncertainty over who holds the Mortgage, he would not have a try title claim").

     The Barbosas also argue that Wells Fargo's publication of the notice announcing the

foreclosure auction and delivery of the notice to them initiated the foreclosure proceedings,

thereby making the parties adverse.  D. 11 at 20.  As discussed above, a mortgagor holds an

equity of redemption, a complementary claim to the mortgagee's claim to legal title, until the

property is foreclosed upon.  <u>See</u> <u>Bevilacqua</u>, 460 Mass. at 775.  Therefore, "[t]he try title act

may be used to challenge a party's claim to hold a mortgage only after that party has foreclosed"

because "[i]t is only upon a foreclosure that the mortgagee claims that it has eliminated the

mortgagor's equity of redemption and now holds a title in the property superior to the mortgagor's." Abate, 2012 WL 6115613, at *4.  Under Massachusetts law, foreclosure may be accomplished by four methods:  (1) peaceable entry and recording a certificate thereof pursuant to Mass. Gen. L. c. 244, §§ 1–2; (2) foreclosure by action pursuant to Mass. Gen. L. c. 244, §§ 4–10; (3) bill in equity pursuant to Mass. Gen. L. C. 185, § 1(k); and (4) sale under a statutory power of sale provided for in the terms of the mortgage pursuant to Mass. Gen. L. c. 244, §§ 11–15, 17.  Negron v. Gordon, 373 Mass. 199, 206 n.4 (1977).

Here, the Barbosas allege that Wells Fargo published the notice of the foreclosure sale and notified them of an impending sale, although there are no allegations that the premises have been sold at auction.  Pet. ¶¶ 16–17.  A property is not foreclosed upon, thereby extinguishing a mortgagor's equity of redemption, until it has been sold.  See Mass. Gen. L. c. 244, § 18 ("The mortgagor . . . may . . . redeem the land mortgaged, . . . unless the land has been sold pursuant to a power of sale contained in the mortgage deed"); Negron, 373 Mass. at 206 (noting that "successful foreclosure requires that the sale be duly publicized, the mortgagor properly notified, and the sale conducted in accordance with the provisions of the relevan[t] statutes"); Housman v. LBM Fin., LLC, 80 Mass. App. Ct. 213, 220–21 (2011) (noting the distinction "between notice requirements, compliance with which is required to successfully conduct a foreclosure by power of sale, and the exercise of the power of sale itself" and stating that "[i]t is well-settled that the power of sale is exercised at the time of the actual sale and terminates the owner's equity of redemption").  Therefore, the Barbosas still have an equity of redemption and there is no adverse claim.  For the foregoing reasons, the Court dismisses the case without prejudice.[2]  Lemelson v.

---

[2] Given this ruling, the Court need not address Wells Fargo's argument that the petition should be dismissed because the Barbosas have failed to allege possession of the premises as required under Mass. Gen. L. c. 240, § 1.  D. 5 at 10–11.

U.S. Bank Nat'l Ass'n, No. 12-10677-PBS, 2012 WL 4527527, at *2 (D. Mass. Sept. 28, 2012)

(dismissing a try title action without prejudice because the "[defendant's] claim to legal title is

not adverse to [the plaintiff's] equitable title"), aff'd, 2013 WL 3287080, at *6 (affirming the

district court's dismissal of the petition to try title "[b]ecause the Barbosas alleged only that they

maintain this try title action on the basis of [the bank's] efforts to foreclose").

### C.   Wells Fargo is Not Entitled to Costs

Wells Fargo requests costs pursuant to Mass. Gen. L. c. 240, § 3 for responding to the

petition.  D. 5 at 20.  The statute provides that "[i]f the persons notified or summoned appear and

disclaim all right and title adverse to the petitioner, they shall recover costs" and "[i]f they claim

title, they shall by answer show why they should not be required to bring an action to try such

title."  Mass. Gen. L. c. 240, § 3.  The Court has dismissed the petition for failure to state a claim

and thus has held that the Barbosas have not alleged the threshold facts necessary to maintain a

try title action.  See Mass. Gen. L. c. 240, § 1 (proving that "[i]f the record title of land is

clouded by an adverse claim, or by the possibility thereof, a person in possession of such land

claiming an estate of freehold therein . . . may file a petition in the land court stating his interest,

describing the land, the claims and the possible adverse claimants so far as known to him, and

praying that such claimants may be summoned to show cause why they should not bring an

action to try such claim"); Abate, 2012 WL 6115613, at *4 (explaining that "a plaintiff in

possession and with record title cannot bring a try title action to compel a purported mortgagee to

try its mortgage title before a foreclosure").  Since the Barbosas could not maintain a try title

action to challenge Wells Fargo's title, Wells Fargo was not "summoned to show cause why [it]

should not bring an action to try such claim."  Mass. Gen. L. c.  240, § 1.  Because the Court

17

dismissed the action, the Court has not provided the Barbosas with the relief they seek which is, in part, an order compelling Wells Fargo to show cause why it should not be required to bring an action to try title.  It is this relief (that has not been provided to the Barbosas for the reasons explained above) that appears to precede any recovery of costs under the statute.  Accordingly, the Court DECLINES to award costs.

## V.       Conclusion

For the foregoing reasons, the Court DENIES the Barbosas' motion to remand (D. 12). The Court GRANTS Wells Fargo's motion to dismiss without prejudice and DENIES its request for costs (D. 4).

**So ordered.**

/s/ Denise J. Casper
United States District Judge